Curia, per

Butler, J.
The ground taken in arrest of judgment, cannot be sustained, according to the view which has been taken of it by a majority of the court. The defendant is indicted in the words of the statute which created and defines the offence with which he is charged. He is definitely and directly charged with aiding a slave in running away, so that his master was deprived of his service. The name of the slave and the name of his master ; the time, place and fact of rendering *319 the aid, and the purpose for which it was rendered, and its accomplishment, are all stated. These are the facts and circumstances which constitute the offence; and of which the defendant had a right to be informed for every legal purpose. That is, that lie might be enabled to judge, whether or not, he was charged with an indictable offence, and to enable him to plead a conviction or acquittal on this indictment, in bar of another indictment for the same offence ; and also to enable the court to pronounce a certain judgment on it.
The means which a defendant may use in the commission of such a crime, might be innocent in themselves, separately considered, and as various as the device and craft of men could suggest, It would have been no crime for the negro, Jim, to have rode the defendant’s horse ; for defendant to have given him money and a ticket to go on the railroad, or a letter to a captain of a vessel. Each one of these things may be done innocently ; and they become criminal, only when they are used as means to effect a criminal purpose. If they should enable a slave to run away, so that his master loses his service, by the design of the party who employed them, a crime would be perpetrated, by the end which they had effected. It is the end accomplished, and not the means employed, that constitute the offence. I can perceive no more reason for setting out in an indictment, the means used in aiding a slave to run away, than to set them out in an indictment for stealing and inveigling a slave. In the two latter cases it never has been thought necessary. These offences are created and enumerated in one clause of the same statute, the statute under which the defendant is indicted. It would be as impracticable, and as little necessary to state the means used in the one as the other; some of the same means might be used in ail of them. It might be a very effectual means of stealing or enveigling a slave, to give him a ticket. The purpose for which it might be given would characterize the offence. A case can be put, in which it would be impossible to set out the means employed in aiding a slave to run away from his master, and yet, a defendant would be clearly guilty. Suppose a party were to admit, openly and without ^disguise, deeming it a merit rather than a crime, that he had procured A. B.’s slave to run away, and that he had furnished him the means to make his escape to Boston, could he not be convicted by his own confession, upon an indictment, charging his crime in the words of the statute, without specifying any means ? The very attempt to set out the means might, and would frequently, defeat the indictment; for nine times in ten, the evidence would show different means from those set out; and it is a settled rule, that the means must be proved as they are set out, when it is necessary to set them out in an indictment. There is a class of cases in which it is necessary to set out the means by which the offence is committed. When the particular means which are used to effect a criminal object, are essential to constitute tiie offence, it is a general rule, that such means must be described on the record, to enable the court to see that the jury have founded their conclusion on proper premises. A single instance will illustrate this position. In an indictment for obtaining money by false pretences, it is necessary to specify the pretences, to see whether they fall within the purview of the statutes. It is necessary, because some pretences are not enumerated in the Statutes of Henry the 8th and George the 2d. If *320 there were a statute against carrying bowie knives and other deadly weapons, enumerated, an indictment under it should specify the weapons prohibited. In an indictment for libel or swindling, the libellous publication and the fraudulent practices should be set out, because they constitute the offence. And so of other offences of the like kind. But not so where the means are indifferent, and the end effected by them is the offence. Adjudicated cases will only serve to illustrate these positions and distinctions. Telley’s case, reported in Leach, is nearer like the one under consideration, than any other quoted. The defendant was indicted under the statute of George the 2d, against aiding and assisting of persons to attempt to escape out of lawful prisons. The indictment stated, that defendants were aiding one Jodell Idswell to make an escape, then and there being a prisoner, &c. Objections were taken to the indictment, on a motion in arrest of judgment; but it was not contended that the means used should have been set out; thus conceding that it was unnecessary; as far at least, as it could be negatively conceded. I think it far from being an unimportant circumstance, that the solicitor has pursued the form prescribed in Grimkc’s Justice. The precedent was taken, no doubt, from some form of indictment made out by some skilful and experienced Attorney General living in Charleston; for it is known that Judge Grimke’s precedents were collected in this way. In the case of the State vs. Cantrell,(a) decided in 1834, Judge O’JSTeall has laid down, very correctly, the distinction where the words of the statute should be pursued, and where the offence should be otherwise more fully and particularly described.
*In the first ground taken for a new trial, it is contended, that if the defendant was guilty of any offence, it was that described in the Act of 1836. By this Act, it is made a misdemeanor to give another’s slave a ticket without authority to do so. But because it may be a misdemeanor, in itself, to give a slave such a ticket as that contemplated in the Act of 1836, it does not follow that it may not also be a means used in the commission of a crime. If it be given with a view to aid a slave to run away, in defiance of his master’s authority, and not to return, so that the master may lose his property in the slave, it must be regarded as a means to commit a crime under the Act of 1154. If, however, it be given to a slave, by one not having authority, to enable him to be absent, but in contemplation of his return to his master’s authority; or to enable a slave to go, and from place to place, to trade or attend to some business of the person giving the ticket, it would be regarded as a misdemeanor, under the Act of 1836.(b) In the Act of 1140, the form of a ticket to be given to a slave is prescribed ; and in a subsequent clause, a fine is imposed on any one who shall give such a ticket without authority. The Act of 1836 should be construed in reference to this Act, both as to the character of the ticket, and the offence which may be committed by giving it. The 2nd ground for a new trial, involves a question of fact which belonged to the jury. The 3rd and 4th grounds, depended on the character of the evidence given by Mr. Addison. From the report of the presiding judge, and the admissions of the Solicitor, and the counsel for the defendant, the witness testified as follows : — That he had seen the defend *321 ant write but twice, once in signing his name some years ago, just after he arrived in this State; and the other time, when the defendant signed his name to a recognizance on his admission to bail. He, witness, never saw prisoner write anything but his name. The ticket offered in evidence, did not have the name of the prisoner. The first signature had made no impression on the mind of the witness, and he did not pretend to have formed any opinion from that. The witness saw another signature, to an order which the prisoner had acknowledged to be his; and which the witness identified, by having written a certificate beneath it ; this, and the signature to the recognizance, formed the only legitimate source of witness’s primary information and opinion of the prisoner’s handwriting. These may have made an impression on the mind of the witness, and have fixed such a standard in it, as to authorize him to give an opinion on the disputed paper. — The question is, had he such a standard, to which ho could refer for his belief and opinion, independently of the papers themselves; and which it seems were in court ? (a) Or had he formed his opinion by a comparison of the characters of the different papers ? Upon this, in some measure depended the prima facie testimony of the witness, which was the predicate of all that followed ; and it seems to me that what followed, had more influence on the witness’s mind than anything else, to wit — the ^peculiar pronunciation of the prisoner, and an actual comparison of handwriting on the stand. The presiding judge left it to the jury to decide the case, in some measure, on the skill of the witness. “ A person who has seen a witness write, and retains no distinct recollection or impression of the handwriting, may revive his memory by looking at the paper he saw written ; yet, he will not be allowed to form his opinion from any supposed knowledge which he may have acquired by comparing the characters of the respective writings.”—(See 4 Carr. & Payne, p. 1.) These reports are found in Eng. Com. L. Rep. vol. -. The practice of allowing witnesses to testify, at all, from their supposed skill in comparison of hands, is now exploded in the English courts, as may be seen by the cases referred to in the case I have quoted. Mr. Addison certainly had some reference in his mind to the characters of the signature which he saw made. He may have had no impression existing in his mind independently of these papers ; if so, his mind had come to its conclusion, rather by reference to them, than by referring to a standard previously existing in his own mind. The witness certainly made a comparison on the stand ; and whether the whole of his testimony was not founded on comparison, or supposed knowledge, acquired by comparison, is not entirely certain. When a witness has distinctly given competent evidence of handwriting, proving it, prima facie, the auxiliary, and in my mind, the unsatisfactory, testimony by comparison may be resorted to. The case of Bowman vs. Plunkett, assumes that competent, but doubtful, evidence, had been given before comparison by the witness of writings admitted to be given, was allowed. I do not wish to lay down any rule in conflict with that opinion ; I will only say, however, if that had been a criminal case, it would have been probably sent back for a new trial. Doubts arising upon nice distinctions of law, should be solved in favor of the accused ; *322 and to say the least of it, this case is not free from doubt on the law. In capital cases, this consideration should have its influence. To sit in judgment on the life of a man, is the highest power that can be delegated to, or exercised by, any human tribunal; and should never be exercised but in conformity with the prescriptions of strict law, and upon satisfactory testimony. Unrestricted testimony and shrewd conjecture, may frequently result in truth, and aid justice ; but in times of agitation, they may be made use of, as fatal means, to gratify the demands of prejudice, and subserve the ends of tyranny. Strict law is a fortress of protection and defence, in times of violence. It is right that we should maintain our peculiar institutions, by a faithful, fearless, and impartial administration of the laws of the land. But justice should balance nicely with her scales before she strikes with her sword.
Note. — The grounds of appeal in this case could not he furnished by the Clerk of the Appeal Court, from their not having been filed, I presume, with the original papers ; which will account for their omission here.
Repobtee.
See Infra, 488, State vs. Le Creux. An.
Wigfall and Wardlaw, for the motion. Caldwell, Solicitor, contra.
Let the defendant have a new trial without prejudice.
Evans, Gantt, and Riohaedson, JJ., concurred.
*Earle, J.
Although I entertained a different opinion at the argument, I incline to agree that the indictment may be good, without averring or setting out the means by which aid was offered. On a sound construction of the Act, however, it seems to be conceded, that the offence was not complete on the part of the defendant, unless the slave did actually run away. This fact, therefore, constitutes a material part of the charge, and should have been alleged, as a distinct substantive averment, with time and place, in order to bring the offence within all the material words of the Act; nor is it sufficient that such fact be supplied, as it is in this indictment, by periphrasis, intendment or conclusion. (2 Hawk. 354, ch. 25.)(a) It is a mistake to suppose, that it is always sufficient to allege the offence in the mere words of the statute ; for where it consists of several acts, they should each be averred, with the same particularity as at common law. This exception was not argued at the bar; and the Court has not considered it. But I am unwilling to sanction, even by silence, a defective pleading in a capital case. I think the indictment insufficient. The second count does not set forth the charge with sufficient certainty and precision. I concur fully in granting the motion for a new trial, on the grounds presented by Mr. Justice Butler.

 2 Hill, 389. An.

 7 Stat. 308, § 3, 4. An.

 See 3 Rich. 383. An.

 1 Rich. 184; 3 McC. 444. An.